UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMES M. CUMMINGS, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil No. 09-391-P-H |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that he is disabled by anxiety, depression, narcissistic and histrionic personality traits, and status post valve replacements for bivalvular endocarditis, capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had the severe impairments of anxiety/depressive disorder and the sequelae of two cardiac valve replacements to correct acute bivalvular endocarditis with congestive heart failure,

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on April 1, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Finding 3, Record at 10; that he retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with limitations that included a restriction to occupations requiring no more than moderately-complex tasks commensurate with a high school education and to occasional interaction with co-workers, supervisors, and the general public, Finding 5, *id*. at 11-12; that, considering his age (27 years old, defined as a younger individual, on the alleged disability onset date of January 1, 1999), education (high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 15; and that he, therefore, was not disabled from January 1, 1999, through the date of decision (May 18, 2009), Finding 11, *id*. at 16.[2]  The Decision Review Board declined to disturb the decision, *see id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as

---

[2] The plaintiff was insured for purposes of SSD benefits through September 30, 2002, *see* Finding 1, Record at 10, and, therefore, to obtain SSD benefits, was obliged to demonstrate that he was disabled on or before that date, *see, e.g., Mueller v. Astrue*, 561 F.3d 837, 840 (8th Cir. 2009). Entitlement to SSI benefits does not depend on insured status. *See, e.g., Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir. 1999). The administrative law judge made no separate finding as to the plaintiff's RFC on or before September 30, 2002. Hence, I construe his RFC finding to address all relevant time periods.  At oral argument, counsel for the commissioner requested that the SSD portion of the decision be upheld not only on the basis of the rationale supplied by the administrative law judge but also on the ground of lack of evidence bearing on the relevant time frame. I recommend that the court decline this invitation. *See Federal Power Comm'n* v. *Texaco Inc.,* 417 U.S. 380, 397 (1974) ("[W]e cannot accept appellate counsel's *post hoc* rationalizations for agency action; for an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself.") (citations and internal quotation marks omitted); *Cagle* v. *Astrue,* 266 Fed. Appx. 788, 794 (10th Cir. 2008) (rejecting commissioner's "impermissible attempt to provide a *post hoc* rationale in support of the ALJ's decision").

adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(g), 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.  Discussion

The plaintiff seeks reversal and remand on any of three bases, contending that the administrative law judge erred in (i) reaching a mental RFC determination unsupported by substantial evidence, (ii) failing to include any RFC restriction corresponding to his finding of moderate limitation in concentration, persistence, or pace, and (iii) improperly rejecting the mental RFC opinion of treating source Charles Farrell, LCMHC.  *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 6) at 2-7.  I conclude, and recommend that the court find, that reversal and remand are warranted on the basis of the first two points of error.

### A.  Mental RFC Determination

The commissioner prescribes a psychiatric review technique that adjudicators must follow in assessing whether, at Step 2, a claimant has medically-determinable mental impairment(s); if so, whether, at Steps 2 and 3, such impairments are severe and meet or equal a so-called Listing (a determination arrived at with the aid of a so-called Psychiatric Review

Technique Form ("PRTF"); and, if one proceeds to Steps 4 and 5, the degree to which such impairments impact RFC (a so-called mental RFC assessment).  *See* 20 C.F.R. §§ 404.1520a, 416.920a.  At the PRTF stage, the severity of the impairment is assessed on the basis of rating of the degree of limitation in four broad functional areas: (i) activities of daily living, (ii) social functioning, (iii) concentration, persistence, or pace, and (iv) episodes of decompensation.  *See id*.  If a mental impairment is judged to be severe but not to meet or equal a Listing, assessment of a claimant's mental RFC is required; if it is judged non-severe, no mental RFC assessment need be made.  *See id*.

Unless the sequelae of a claimant's impairments are obvious to a layperson as a matter of common sense, an administrative law judge is not qualified to determine RFC on the basis of the raw medical evidence but instead must look to a medical expert to do so.  *See, e.g., Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record"); *Rohrberg v. Apfel,* 26 F. Supp.2d 303, 311 (D. Mass. 1998) ("[T]he ALJ, although empowered to make credibility determinations and to resolve conflicting evidence, is not at liberty simply to ignore uncontroverted medical reports.  An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (citations and internal punctuation omitted).

The plaintiff is correct that the administrative law judge's detailed assessment of his mental RFC cannot be traced to, and is unsupported by, any medical expert opinion of record.

4

The record contains only one mental RFC assessment, dated October 1, 2008, and submitted by counselor Farrell.  *See* Record at 799-806.  In a PRTF dated May 15, 2007, Brenda Sawyer, Ph.D., a Disability Determination Services ("DDS") nonexamining consultant, assessed the plaintiff's mental impairments as severe but stated that they were not expected to remain severe for 12 months.  *See id*. at 457.  Hence, she did not complete a mental RFC assessment.  *See id*.

The administrative law judge found that the plaintiff had severe mental impairments that caused mild limitations in activities of daily living, mild limitations in social functioning, and moderate limitations in concentration, persistence, or pace, with no evidence of episodes of decompensation.  *See id*. at 10.  However, he explicitly rejected the only expert mental RFC opinion of record, that of counselor Farrell.  *See id*. at 14.  Thus, in essence, he crafted his finding of the plaintiff's mental RFC from the raw treatment and assessment evidence of record.  At oral argument, counsel for the commissioner contended that he permissibly did so, making a common-sense judgment as a layperson in view of evidence calling into serious question the plaintiff's credibility and suggesting that he was capable of a significantly higher level of functioning than claimed.

I cannot agree.  The record in this case contains conflicting expert evidence concerning the severity of the plaintiff's restrictions.  As his counsel pointed out at oral argument, two treating physicians, both of whom diagnosed the plaintiff as suffering, *inter alia*, from a major depression, recurrent, assigned him GAF, or Global Assessment of Functioning, scores consistent with serious functional impairment.  *See id*. at 592 (notes of Beata Zarankow, M.D., dated January 16, 2007, assessing the plaintiff with a GAF score of 49), 794 (notes of George M.

5

Nowak, M.D., dated March 18, 2008, assessing him with a GAF score of 50).[3] The administrative law judge was not qualified, as a layperson, to make that assessment, which should have been entrusted to an expert or experts. His mental RFC finding accordingly was unsupported by substantial evidence.

In the absence of a supportable RFC finding, the commissioner's Step 5 finding of ability to engage in other work cannot stand, necessitating reversal and remand for further proceedings consistent herewith. *See, e.g., Rosado*, 807 F.2d at 294 (at Step 5, the record must contain positive evidence in support of the commissioner's findings regarding a claimant's RFC); *Arocho v. Secretary of Health & Human Servs*., 670 F.2d 374, 375 (1st Cir. 1982) (responses of vocational expert are relevant only to extent offered in response to hypotheticals that correspond to medical evidence of record; "To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions.").

**B. Failure To Incorporate Moderate Limitation on Concentration, Persistence, or Pace**

"This court has indicated that mental RFC findings typically should reflect, and be consistent with, the degree of impairment found by way of use of a PRTF." *McHugh v. Astrue*, Civil No. 09-104-BW, 2009 WL 5218059, at *4 (D. Me. Dec. 30, 2009) (rec. dec., *aff'd* Jan. 20, 2010).

---

[3] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text rev. 2000) ("DSM-IV¬TR"), at 32. The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id*. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id*. at 34. A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id*. (boldface omitted).

As the plaintiff points out, *see* Statement of Errors at 4, the administrative law judge's mental RFC finding had two components: a restriction to occupations requiring no more than moderately-complex tasks commensurate with a high school education, and a restriction to occasional interaction with co-workers, supervisors, and the general public, *see* Finding 5, Record at 11-12.  The plaintiff argues that the first restriction by its terms is based on educational attainment, not the existence of a mental impairment, and the second restriction pertains to social functioning.  Therefore, he reasons, no aspect of the administrative law judge's mental RFC reflected a moderate limitation in concentration, persistence, or pace, an error constituting a second basis for reversal and remand.

At oral argument, counsel for the commissioner contended that the administrative law judge's mental RFC did in fact reflect that moderate limitation because (i) the administrative law judge transmitted both the plaintiff's educational background and the limitation to moderately-complex tasks to the vocational expert, signaling that the latter limitation addressed deficiencies in concentration, persistence, or pace, not education, *see id*. at 52-53, (ii) the plaintiff had in the past performed skilled/complex tasks, having a Specific Vocational Preparation, or SVP, level of seven, *see id*. at 52, and accordingly the restriction to moderately-complex tasks accounted for deficiencies in concentration, persistence, or pace,[4] and (iii) the restriction to occasional interaction with co-workers, supervisors, and the general public necessarily also reflected those deficiencies because the plaintiff's non-severe, mild limitations in social functioning, alone, would not have required such a restriction.

While courts overlook an "arguable deficiency in opinion-writing technique" if not

---

[4] In support of the proposition that deficiencies in concentration, persistence, or pace can bear on capacity to perform certain skill levels of work, counsel for the commissioner cited *Jens v. Barnhart*, 347 F.3d 209 (7th Cir. 2003), in which the court found that the record supported the administrative law judge's conclusion that the claimant was capable of performing semiskilled work despite often experiencing deficiencies of concentration, persistence, or pace.  *See Jens*, 347 F.3d at 213.

outcome-determinative, *see Bryant ex rel. Bryant v. Apfel*, 141 F.3d 1249, 1252 (8th Cir. 1998), reversal and remand are warranted when failures to explicate and/or even address material issues prevent a reviewing court from concluding that the administrative law judge reached a supportable result *via* an acceptable analytical pathway, *see, e.g., Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.") (citations omitted).

As noted above, the administrative law judge in this case crafted his own mental RFC from the raw medical evidence. In so doing, he never explained how he derived the enumerated restrictions or how they reflected the limitations found at the PRTF level of analysis. *See* Record at 12-14. It is not apparent, on the face of the mental RFC restrictions, that they do fully comport with the PRTF findings. The restriction to "no more than moderately complex tasks commensurate with a high school education" could be construed as reflecting the plaintiff's level of educational achievement: the administrative law judge in fact found him to have a high school education. *See* Finding 8, id. at 15. And, restrictions on interactions with people typically reflect limitations in social functioning. It is *possible*, for one or more of the reasons enumerated by the commissioner's counsel at oral argument, that the mental RFC restrictions found by the administrative law judge do reflect a moderate limitation in concentration, persistence, or pace. However, in the absence of explication *by the decision-maker*, one cannot tell. *See Texaco*, 417 U.S. at 397; *Cagle*, 266 Fed. Appx. at 794. Because the commissioner's mental RFC cannot be discerned to comport with his findings at the PRTF level, remand is warranted on this basis, as well.

### C. Treatment of Treating Counselor

The plaintiff finally faults the administrative law judge for failing to evaluate the Farrell mental RFC opinion in accordance with Social Security Ruling 06-03p ("SSR 06-03p"). *See* Statement of Errors at 5-7. I find no error.

Farrell found the plaintiff to suffer from a number of moderate to marked limitations in mental functioning, for example, marked limitations in his ability to maintain attention and concentration for extended periods, to sustain an ordinary routine without special supervision, and to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *See* Record at 799-800. The administrative law judge gave little weight to this assessment because it was not from a so-called "acceptable medical source," was inconsistent with the record as a whole, and was clearly refuted in subsequent progress notes from Laura Hancock, D.O., the plaintiff's treating psychiatrist. *See id*. at 14.

The plaintiff acknowledges that Farrell, a counselor, is not an "acceptable medical source" as that term is defined in 20 C.F.R. §§ 404.1513(a) and 416.916(a). *See* Statement of Errors at 5. He posits that: (i) pursuant to SSR 06-03p, an administrative law judge is obliged to evaluate opinions from other medical sources in accordance with the same factors used to assess the weight of opinions from acceptable medical sources, (ii) the administrative law judge did not purport to do so here, and (iii) in any event, the reasons given for discounting the Farrell opinion cannot withstand scrutiny. *See id*. at 5-7.

The language of SSR 06-03p quoted by the plaintiff suggests, but does not require, that administrative law judges apply the factors used to assess opinions of acceptable medical sources when evaluating opinions of other medical sources. *See* SSR 06-03p, reprinted in *West's Social*

9

*Security Reporting Service,* Rulings 1983-1991 (Supp. 2009), at 331 ("Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'").

In any event, assuming *arguendo* that consideration of these factors is required in assessing the weight to be afforded to other medical sources, this court has held that even RFC opinions of acceptable medical sources may be discounted for good reason without slavish discussion of all potentially-applicable factors. *See, e.g., Golfieri v. Barnhart*, No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006). SSR 06-03p requires even less: it directs adjudicators to consider the opinions of other medical sources and to explain the weight afforded to them but does not explicitly require that adjudicators provide good reason for their assignment of weight. *See* SSR 06-03p, at 333 ("Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.").

The administrative law judge adequately explained the weight afforded to the Farrell mental RFC opinion. *See* Record at 14. Moreover, while not obliged to supply good reason for his assignment of weight, he did so. He supportably assigned the Farrell opinion less weight because it was not from an acceptable medical source. *See, e.g.*, SSR 06-03p, at 332 ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable

10

medical source' because . . . 'acceptable medical sources' are the most qualified health care professionals.") (internal quotation marks omitted); *Kresyman v. Astrue*, No. 09-00507-CV-W-NKL, 2010 WL 670248, at *5 (W.D. Mo. Feb. 22, 2010) ("The opinion of a treating medical source, if not a physician or other acceptable medical source, should still be considered, but those other medical source opinions are entitled to less weight than that of a treating physician."). And, he supportably assigned it less weight because it conflicted with other evidence of record, notably the progress notes of the plaintiff's most recent treating psychiatrist, Laura G. Hancock, D.O. *See, e.g.*, Record at 813-14 (assigning the plaintiff a Global Assessment of Functioning, or GAF, score of 60, noting that his concentration and memory were intact, and reporting that he told her that he was prevented by working "because I never worked before. I don't have the skills to work. I had plans and dreams but no motivation to do it.").[5]

There is no reason to disturb the administrative law judge's handling of the Farrell opinion.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

---

[5] A GAF score in the range of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id*. (boldface omitted).

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 20th day of May, 2010.

<u>/s/ John H. Rich III</u><br>
John H. Rich III<br>
United States Magistrate Judge